**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TEXTRON FINANCIAL CORP., | CIVIL ACTION NO. 3:11-CV-1958 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| W. JACK KALINS, | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is Defendant W. Jack Kalins's Motion to Strike Off And/Or Open the Judgment Entered by Confession and for Stay of Execution of the Clerk of Court's October 25, 2011 Entry of Judgment. (Doc. 23). For the reasons below, the Court will deny Defendant's Motion to the extent it seeks to strike or open the judgment, however, the Court will hold an evidentiary hearing as to attorneys' fees at a later date.

**BACKGROUND**

The events underlying Defendant's current Motion are not in dispute. Defendant Kalins is the Chairman and CEO of Vacation Charters, Ltd. which owns and operates a resort, time share property, water park, and related facilities in Lake Harmony, Pennsylvania. Kalins was the guarantor to a series of loan transactions between Plaintiff, Textron Financial Corporation, and Vacation Charters, Ltd., all of which contained confession of judgment provisions. In 2011, Vacation Charters defaulted on its loans as per the terms of the financing documents, and Textron issued a Default Notice on May 16, 2011. This notice advised Defendant that all of its obligations were immediately due in full. Borrower Vacation Charters acknowledged events of default and, on August 2, 2011, Textron, Vacation Charters, and Kalins executed a Forbearance Agreement (amended

September 22, 2011). On November 9, 2011, the Court granted the appointment of a receiver to run the resort.

On October 25, 2011, the Clerk of Court entered a Confession of Judgment against Defendant W. Jack Kalins in the amount of $6,103,682.29. That same day, the Clerk also entered a Confession of Judgment in the same amount as against the borrower, Vacation Charters, in an accompanying matter, docketed 3:11-cv-1957. On November 18, 2011, Defendant Kalins moved the Court to Strike Off and/or Open the Judgment Entered by Confession and for Stay of Execution. (Doc. 23). While Defendant Kalins does not argue that this confessed judgment was inappropriate *per se*, he argues that the particulars of the confessed judgment were improper. Specifically, Kalins takes issue with the amount of credit rendered from the Uniform Commercial Code ("UCC") sale of consumer promissory note collateral.[1] As Textron was the only bidder at this sale, Kalins believes the net proceeds–$27,000,000–represents a fraction of their potential value, and that the outstanding debt amount is therefore open to question. Further, Kalins argues that Textron has been receiving payments on other loans before and after the Confession of Judgment, and that the Confession of Judgment also includes improper attorney fees.

This Motion has been fully briefed and oral argument was held on this Motion before the Court on February 24, 2012. The matter is now ripe for the Court's review.

**DISCUSSION**

**I. Legal Standard**

Rule 60(b)(6) states that: "On motion and just terms, the court may relieve a party

---

[1] These consumer promissory notes pertained to loans made by Vacation Charters to purchasers of timeshare interests in the resort complex.

2

or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." The relief afforded by this provision is only to be granted in "extraordinary circumstances." *Morris v. Horn*, 187 F.3d 333, 341 n.10 (3d Cir. 1999) (citation omitted). "A party seeking such relief must bear a heavy burden of showing circumstances so changed . . . that, absent such relief an 'extreme' and 'unexpected' hardship will result." *Hodge v. Hodge*, 621 F.2d 590, 593 (3d Cir.1980) (citations omitted). As this jurisdiction in this matter is predicated upon diversity of citizenship, the substantive aspects of the motion shall be governed by Pennsylvania law. *FDIC v. Deglau*, 207 F.3d 153, 167 (3d Cir. 2000).

"A petition to strike and a petition to open are two forms of relief with separate remedies; each is intended to relieve a different type of defect in the confession of judgment proceedings." *Deglau*, 207 F.3d at 167 (citation omitted). A Court will strike a confessed judgment "where there is an apparent defect on the face of the record on which the judgment was entered." *Germantown Sav. Bank v. Talacki*, 441 Pa. Super. 513, 519 (Pa. Super. Ct. 1995); *Resolution Trust Corp. v. Copley Qu-Wayne Assocs.*, 546 Pa. 98, 106 (Pa. 1996). "The request can only be granted if a 'fatal defect or irregularity' appears on the record's face." *Republic First Bank v. Jemal*, 2011 WL 4087564 at *5 (E.D. Pa. Sept. 13, 2011) (quoting *Mumma v. Boswell, Tintner, Piccola & Wickersham*, 937 A.2d 459, 463 (Pa. Super. Ct. 2007)). The burden rests with the party against whom judgment was confessed, who must disprove the facts contained within the confession or judgment. *Davis v. Woxall Hotel, Inc.*, 395 Pa. Super. 465, 470 (Pa. Super. Ct. 1990).

Conversely, a confessed judgment will be opened where a party presents evidence "which in a jury trial would require that the issues be submitted to the jury." *Germantown*

*Sav. Bank*, 441 Pa. Super. at 520; Pa. R. Civ. P. 2959(e). Such relief is to be granted only in "a limited number of circumstances," specifically where the moving party "acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to the jury." *First Seneca Bank & Trust Co. v. Laurel Mountain Dev. Corp.*, 506 Pa. 439, 443 (Pa. 1984). For such evidence to be sufficient, it must be "clear, direct, precise and believable." *Germantown Sav. Bank*, 441 Pa. Super. at 520. "A petition to open a confessed judgment is an appeal to the court's equitable powers, within the court's sound discretion, and will not be disturbed absent an error of law or clear abuse of discretion." *Liazis v. Kosta, Inc.*, 421 Pa. Super. 502, 506 (Pa. Super. Ct. 1992).

## II. Analysis

### A. Motion to Strike the Judgment

In his reply brief, Kalins argues that the confessed judgment should be stricken as it is facially flawed in having "too many unknowns and disputed issues regarding the valuation of the debt at issue." (Doc. 26 at 3). In particular, Kalins requests that the judgment be stricken as: (1) the amount due is not evident on the face of the Motion for Confessed Judgment; and (2) the attorney fees are excessive and unsupported.

I will deny Kalins's Motion insofar as it seeks to strike the Confession of Judgment. At oral argument, Defendant's Counsel made no argument that the judgment was facially invalid, and I will deem this argument abandoned. Rather, at the core of this disagreement between the parties lie questions as to the values contained within the Confession of Judgment, and is more properly considered below as a motion to open the judgment. *See Davis*, 395 Pa. Super. at 469 ("Unless it is evident from the face of the instrument that the

judgment is grossly excessive, or includes recovery for items not authorized by the instrument, a challenge to the accuracy of such amounts should be resolved by a petition to open the judgment."). Therefore, I will decline to strike the judgment.

### B. Motion to Open the Judgment

Kalins requests that the judgment be opened as: (1) the debt is potentially overstated in light of the UCC sale; (2) it included excessive and unsupported attorney fees; and (3) it ignores payments made on house paper. These arguments will be addressed in turn.

#### 1. Proceeds from the UCC Sale

On September 20, 2011, in accord with the parties' Forbearance Agreement, Textron sold off promissory notes pledged as cross-collateralized security on Kalins's debts. Textron was the only bidder at the UCC Sale, purchasing the notes with a credit bid of $27,000,000. The costs were $174,158.96 and the proceeds from the sale were therefore $26,825,841.04.

Kalins avers that this $27,000,000 bid was too low and "unjustly enriches Plaintiff at Kalins' expense." (Def.'s Br. at 17, Doc. 24). Kalins submits that at the time of the UCC sale, the promissory notes were worth $27,845,829 on their face with an average contract interest rate of 15%. As such, Kalins seeks additional information as to this sale and the fairness of the amount bid by Textron. Textron notes that the evidentiary burden rests with Kalins in a motion to open, and responds that it is "not believable" that these notes, admittedly worth $27,845,829–but with a historic default rate of 9.2%–could be worth more than $27,000,000. (Pl.'s Br. in Opp'n at 22, Doc. 25).

Instead, Textron argues that the sale was executed in a commercially reasonable manner, which is all that is required by Pennsylvania law. 13 Pa.C.S.A. § 9610(b) ("Every

aspect of a disposition of collateral . . . must be commercially reasonable."). In fact, Pennsylvania law is clear that "[t]he fact that a greater amount could have been obtained . . . is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition or acceptance was made in a commercially reasonable manner." *Id.* at § 9627; *Chrysler Credit Corp. v. B.J.M., Jr.*, 834 F. Supp. 813, 833 (E.D. Pa. 1993). However, Pennsylvania has adopted a specific UCC provision for instances such as this, where a secured party has sold itself the collateral at issue. *Id.* at § 9615(f) ("Calculation of surplus or deficiency in disposition to person related to secured party."). That particular provision provides in pertinent part that:

> The surplus or deficiency following a disposition is calculated based on the amount of proceeds which would have been realized in a disposition complying with this chapter to a transferee other than the secured party, a person related to the secured party or a secondary obligor if:
>
> (1) the transferee in the disposition is the secured party, a person related to the secured party or a secondary obligor; and
>
> (2) *the amount of proceeds of the disposition is significantly below the range of proceeds which a complying disposition to a person other than the secured party, a person related to the secured party or a secondary obligor would have brought.*

*Id.* (emphasis added). In short, a court is required to take a closer look at the amount received for collateral where the secured party is the buyer, and where the proceeds are significantly below what a third party would have paid. The burden of proof applicable to this subsection in a non-consumer transaction is on the debtor, who must establish that the amount rendered really was significantly below the range that an outside party would have offered. *Id.* at § 9626(a)(5).

  I do not find that Kalins has established that Textron's $27 million payment for the

promissory notes was significantly below what a third party would have paid. Kalins avers that the notes had a face value of $27,845,829, but as stated above, this calculation disregards any default on these notes, which Textron claims occurred at a rate of 9.2%. Instead, Kalins's chief contention is that Textron's appraisal[2] of the promissory notes for $18,525,183 to $21,170,070 makes their ultimate bid of $27 million seem suspiciously large. While it is interesting that Textron bid such a high amount, I cannot hold that there has been evidence submitted that would raise a jury question as to whether this amount was significantly *below* the range of proceeds that would have been obtained through a third party.

In support of my determination that this price was not significantly below market value is that the sale was conducted in a commercially reasonable manner where third parties were invited to outbid Textron for these notes. Such commercial reasonableness is generally resolved on a case-by-case basis, *Chrysler Credit,* 834 F. Supp. at 833, and considers whether a sale was "conducted in good faith and in accordance with commonly

---

[2]These numbers were provided to Textron through their outside auctioneer, Savills, LLC, a "global real estate services provider." (Aff. of R. John Wilcox, II at ¶¶ 27, 4, Doc. 30). However, Kyle Shonak, the Vice President of Textron, stated in his affidavit that this appraisal indicated an amount of $23,000,000. (Aff. of Kyle Shonak at ¶ 14, Doc. 25-3). At any rate, Savills's evaluation contained the following analysis:

> It is Savills' estimation that a third party could purchase the pool within the range of 63.5 - 72.6% of the Unpaid Principal Balance as of July 31, 2011. Note that while the loans are currently performing at approximately 92%, Savills believes that an investor will discount this figure when evaluating the opportunity because it will not obtain the broader lending relationship[ with [Vacation Charters], and thus will have less certainty with respect to whether [Vacation Charters] remains solvent and can perform its duties as developer, a key factor in determining the appropriate default rate for the pool.

(Valuation Report, Doc. 30 at 129).

7

accepted commercial practice." *Blacks Law Dictionary* 305 (9th ed. 2009). The Pennsylvania statutes find commercial reasonableness where collateral is disposed of "otherwise in conformity with reasonable commercial practices among dealers in the type of property which was the subject of the disposition." 13 Pa.C.S.A. § 9627(b)(3). And, the Third Circuit has also considered to be relevant: "(1) good faith, (2) avoidance of loss, and (3) an effective realization." *Solfanelli v. CoreStates Bank N.A.*, 203 F.3d 197, 200 (3d Cir. 2000).

Textron maintains that the sale of the promissory notes was commercially reasonable. It retained Savills, LLC, an experienced professional real estate firm, that broadly advertised the sale–including placing ads in publications such as *The New York Times* and *The Philadelphia Inquirer*, inserting notifications in trade publications, posting the sale on their respective websites, placing phone calls to potential buyers, and directly marketing the notes to more than 3,400 prospective bidders. (Aff. of R. John Wilcox, II at ¶¶ 14-23, Doc. 30). Further, the sale was consummated at a public auction with a licensed auctioneer. (*Id.* at ¶ 11). Textron also provided a 'data room' to encourage prospective buyers to conduct due diligence. (*Id.*). These factors counsel commercial reasonableness in demonstrating the necessary factors of good faith, avoidance of loss, and effective realization, and Defendant Kalins offers no argument or evidence that the sale itself was not conducted in a commercially reasonable manner. As such, I cannot find that Defendant has raised a triable issue as to whether the sale was executed in a commercially reasonable fashion in accordance with Pennsylvania law.

Finally, to any extent these assets have appreciated (or depreciated) since the UCC sale, this consideration is largely immaterial. As the Pennsylvania statutes state,

8

commercial reasonableness is the hallmark of this analysis, and "[t]he fact that a greater amount could have been obtained . . . at a different time . . . is not of itself sufficient to preclude the secured party from establishing that the . . . disposition . . . was made in a commercially reasonable manner." 13 Pa.C.S.A. § 9627(a). Instead, the timing of such a sale is only "limited by the [creditor's] good faith duty to maximize the proceeds upon the sale of the collateral." *Solfanelli v. Meridian Bank*, 230 B.R. 54, 66 (M.D. Pa. 1999) (quoting *United States v. Willis*, 593 F.2d 247, 259 (6th Cir. 1979)). Here, there has been no assertion of bad faith. Instead, at oral argument, Kalins's attorney argued that the Defendant had not provided any performance data on the notes since September of 2011, indicating that they could potentially have appreciated since the time of the sale. I realize that these are volatile economic times, and that the Court's appointment of a receiver on November 9, 2011 may have also affected the value of these notes.[3] However, I find it improper to question the reasonableness of a commercial sale held back in October, which does not appear to have been objected to contemporaneously, upon the mere suggestion of appreciation.

Therefore, I hold that the sale of these notes, in both time and manner, was commercially reasonable and I will decline to open the judgment on this ground.

### 2. **Attorneys Fees and Commission**

Pennsylvania law "requires that a contractual agreement setting attorney's fees be

---

[3] The receivership may have added value to the notes. As explained in the previous footnote, Savills predicated its valuation in part on the fact that Vacation Charters was facing solvency problems at the time of the sale. Specifically, Savills's Valuation Report opined that "whether [Vacation Charters] remains solvent and can perform its duties as developer, a key factor in determining the appropriate default rate for the pool." (Valuation Report, Doc. 30 at 129).

9

'reasonable,' and allows for court modification of unreasonable fee provisions." *Webster Capital Finance, Inc. v. Chetty Builders, Inc.*, Civ. Act. Nos. 10–5207, 10–5208, 10–5209, 2011 WL 2039058 at *10 (E.D. Pa. May 20, 2011). As such, courts are encouraged to be alert for excessive attorney fees, and to exercise their inherent equitable power to reduce them where appropriate. *PNC Bank v. Bolus*, 440 Pa. Super. 372, 379-80 (Pa. Super. Ct. 1995). Of course, "[w]hat may be reasonable is not necessarily the amount stipulated in the contract." *Consumers Time Credit, Inc. v. Remark Corp.*, 259 F. Supp. 135, 137 (E.D. Pa. 1966).

*Republic First Bank v. Jemal* presented a situation quite analogous to the attorneys' fee issue in the instant matter. Civ. Act. Nos. 10–cv–1009, 10–cv–1768, 10–cv–1769, 2011 WL 4087564 (E.D. Pa. Sept. 13, 2011), *adopted at* 2011 WL 4344030 (E.D. Pa. Sept. 14, 2011). There, it was first determined that attorneys' fees, which were calculated in accordance with the parties' written agreements, were not facially defective and did not warrant striking the judgment. *Id.* at *8. Additionally, as the Defendants did not present clear facts suggesting an alternative fee, the motion to open was similarly rejected. *Id.* However, in light of Pennsylvania's requirement of reasonable attorney fees, and the fact that the attorneys' fees were so unreasonable as to constitute a penalty, that court determined it prudent to exercise its equitable power to hold an evidentiary hearing in order to set reasonable attorneys' fees. *Id.* at *9; *see also DAP Financial Management co. v. Ciotti*, 2000 WL 33711071 at *6 (Ct. Com. Pl. Phila. Co. May 16, 2000) (declining to strike or open the judgment, but to exercise its equitable power to reduce attorneys' fees based on the record as a whole).

As in *Republic First Bank*, the attorneys' fees in the Confessed Judgment are

10

warranted by the loan documents.  In particular, the First Amendment to the Forbearance Agreement allowed for confession of judgment, "including, without limitation, unpaid principal, interest past due and to become due, late charges, costs of collection, attorneys' fees and court costs" combined with "costs of suit and, with an attorney's commission of five percent of the amount due (but not less than $10,000), and without stay of execution." (First Am. at § 8, Pl.'s Ex. J).  Yet, also as in *Republic First Bank*, the two concurrent lawyers' fees in the matter *sub judice* have the potential to operate as a contractual penalty, and "fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *Pantuso Motors, Inc. v. CoreStates Bank, N.A.*, 568 Pa. 601, 609 (Pa. 2002) (quoting Restatement (Second) of Contracts § 356(1)).  Through including both "Costs of Collection, incl. Attorneys' Fees" in the amount of $140,550.02 and an "Attorneys [sic] Commission of 5% of Amounts Due" in the amount of $290,651.54 (Assessment of Damages at 3, Doc. 14), I find that this case presents the real potential to either multiply the attorneys' fees impermissibly or to enforce an improper penalty on the debtor.[4]  Unfortunately, it is impossible to delineate the particulars of these amounts from the face of the documents.  For example, I cannot determine what portion of the $140,550.02 is attorneys' fees versus costs of collections.  Therefore, an evidentiary hearing will be held to determine the appropriateness of these fees and whether any adjustment shall be made.

---

[4] Cases typically allow for a flat attorney commission along with only "cost of suit," not additional attorney fees. *See e.g. Ohio Cas. Ins. Co. v. LRS Const., Inc.*, C.A. No. 2:07-MC-331, 2008 WL 4533677 at *1 (W.D. Pa. Oct. 03, 2008) (confession of judgment provision included "the cost of legal proceedings and an attorney's commission"); *Resolution Trust Corp. v. Foley*, No. CIV. A. 93-0403, 1993 WL 273432 at *2 (E.D. Pa. July 20, 1993) (confession of judgment provision providing for "costs of suit and an attorney's commission," and construing attorney commission as the attorney fee).

### 3.     **Credits for House Paper**

The final issue in this matter revolves around payments allegedly made to Textron on "house paper."[5] Specifically, the Defendant argues that Textron has not provided proper credits to the outstanding debt for the house paper, while Textron claims in their brief that the computation in their Motion for Confession of Judgment reflected all payments as of October 16, 2011, and that all remaining payments have been turned over to the borrower. (Pl.'s Br. at 19 n.2, Doc. 25).  Though Defendant's brief does not shed much light on this issue, Kalins alleged at oral argument that Textron took control of the house paper at some point predating the Confession of Judgment, and that he was unsure as to the disposition of these proceeds.  Counsel for Textron responded that Textron had not taken any of the house paper in question, and that any in its possession has been returned to Vacation Charters.

As evident from the above, this potential dispute is not sufficiently coherent to meet the standard for opening a judgment.  Kalins has not articulated any ascertainable loss or figures, but instead expressed confusion as to the overall state of the house paper.  Of course, in alleging a meritorious defense, a petitioner must "provide enough evidence to support the defense to the extent of creating a jury issue." *Liazis*, 421 Pa. Super. at 506. Here, no evidence has been presented suggesting that any of the house paper was not accounted for and I therefore cannot find that this particular complaint raises an issue sufficient to meet the jury standard for a motion to open. Of course, if there are outstanding

---

[5]This term appears to refer to timeshare loans made by Vacation Charters where Textron, for whatever reason, did not advance the loan amounts back to Vacation Charters.

balances between these parties as to house paper, there are avenues to resolve this. However, I will decline to open the judgment as to this matter.

## **CONCLUSION**

For the reasons above, the Court will deny Defendant Kalins's Motion insofar as it seeks to strike or open the judgment.  However, the Court will hold an evidentiary hearing as to attorneys' fees at a later date.  An appropriate Order follows.


| March 7, 2012 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |